Filed 1/29/21  P. v. McDermott CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROHAN MCDERMOTT,<br><br>Defendant and Appellant. | B302013<br><br>(Los Angeles County<br>Super. Ct. No. SA052445) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.

Rohan McDermott appeals from the trial court's denial of his Penal Code section 1170.95 petition[1] for vacation of his first degree murder conviction and resentencing. Because McDermott is ineligible for relief as a matter of law, we affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The murder and McDermott's conviction*

In 2004, McDermott and Alcliff Daley planned to steal marijuana from Troy Lewis and Dwane Godoy. After luring the men into Daley's apartment, Daley pointed a gun at Godoy and Lewis, and McDermott taped their hands behind their backs. Daley threatened to kill them and leave their bodies to rot in a closet. When Daley noticed that Godoy had managed to free his hands, he put the gun to Godoy's head and again threatened to kill him. McDermott retaped Godoy's hands and also taped his feet. When McDermott and Daley exited the apartment, Godoy

---

[1] All further undesignated statutory references are to the Penal Code.

[2] On May 20, 2020, the People filed a motion requesting that we take judicial notice of portions of the record in case No. B193585, including our prior unpublished opinion, excerpts of the clerk's transcript (including the verdict and a portion of the jury instructions), an order denying McDermott's state petition for writ of habeas corpus, a report and recommendation and order regarding the denial of his federal petition for writ of habeas corpus, the Ninth Circuit Court of Appeals' order denying his request for a certificate of appealability, and the United States Supreme Court's order denying a writ of certiorari. We grant the motion. (Evid. Code, §§ 451, subd. (a), 452, subd. (d).) We derive the factual and procedural background primarily from our unpublished opinion in this case.

2

managed to free himself.  But, when he tried to flee, McDermott was at the apartment's front door.  McDermott told Godoy, " 'You're not going nowhere.' "  The two men struggled, and Godoy got away.  McDermott chased him, but he hid underneath a car in a neighboring yard.  Lewis did not escape.  His body was discovered in the apartment; he had been shot in the forehead, and his hands were bound behind his back with tape.

A jury found McDermott guilty of first degree murder with true findings on special circumstance allegations that the murder was committed during an attempted kidnapping for ransom and an attempted robbery.  (§ 190.2, subd. (a)(17)(A) & (B)).  It also found true an allegation that a principal was armed during the offense.  (§ 12022, subd. (a)(1).)  The trial court sentenced McDermott to life in prison without the possibility of parole, plus one year.  In 2007, this division affirmed the judgment of conviction.  (*People v. McDermott* (June 28, 2007, B193585) [nonpub. opn.].)

2. *Section 1170.95 petition*

On September 6, 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), McDermott filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine; he was not the actual killer; he did not, with the intent to kill, aid and abet the actual killer; and he could not now be convicted of murder in light of changes to sections 188 and 189 effectuated by Senate Bill 1437.  He also checked a box requesting the appointment of counsel.

3

On September 10, 2019, the trial court summarily denied the petition. McDermott was not present, and was not represented by counsel. The court found McDermott was ineligible for relief as a matter of law because the jury's true findings on the special circumstance allegations established he intended to kill, or was a major participant in the murder and acted with reckless indifference to human life.

On September 27, 2019, McDermott filed a notice of appeal. Attached was a two-page document explaining that he had not acted as a major participant in the murder with reckless indifference to human life, as those terms were defined in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

## DISCUSSION

McDermott contends that the trial court erred by summarily dismissing his petition based on the jury's special circumstance finding, without appointing counsel for him. We disagree.

1. *Applicable legal principles*

    a. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

4

As relevant here, prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248; *People v. Powell* (2018) 5 Cal.5th 921, 942.) Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile*, *supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

b. *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder

5

due to changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process:  an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief.  (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; *Verdugo, supra,* 44 Cal.App.5th at pp. 327–330, rev.gr.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony-murder theory.  (*Tarkington, supra,* 49 Cal.App.5th at pp. 897–898, rev.gr.; *Verdugo, supra,* 44 Cal.App.5th at pp. 329–330, rev.gr.)  If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel.  (*Tarkington,* at pp. 898, 900–902; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178 (*Torres*), review granted June 24, 2020, S262011; *Verdugo,* at p. 332; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139–1140, review granted Mar. 18, 2020, S260598.)

If, however, the petitioner's eligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, rev.gr.; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898, rev.gr.) If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.) At that hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

2. *Application here*

a. *Contentions*

McDermott challenges the trial court's ruling on several grounds. First, he argues that his petition made a prima facie showing that he falls within the parameters of section 1170.95; therefore, the court erred by summarily denying his petition and failing to appoint counsel for him. Second, he contends that the trial court erred by examining the record of conviction to determine eligibility prior to the section 1170.95, subdivision (d) hearing stage. In his view, section 1170.95 was "designed . . . to create a *different* factual record on which to adjudicate the case," and a petitioner's filing of a facially compliant petition "institute[s] a proceeding in which the prosecution has a new burden of proof beyond a reasonable doubt on a potentially enlarged factual record, beyond the record of conviction." Third, he urges that the court erred by finding him ineligible based on the jury's special circumstance findings, which predated our

7

Supreme Court's decisions in *Banks* and *Clark*. He argues that he did not, in fact, "manifest reckless indifference to human life" during the offense because, among other things, Daley purportedly threatened him with the gun and he acted under duress. And no court has found, subsequent to *Banks* and *Clark*, that he was a major participant who acted with reckless indifference to human life.

The People counter that the trial court properly reviewed the record of conviction and was not required to appoint counsel because McDermott was ineligible as a matter of law, given the jury's special circumstance findings. Further, they argue, any error was harmless because it is not reasonably probable that McDermott would have obtained a more favorable result had counsel been appointed.

b. *The trial court did not err by reviewing the record of conviction or by declining to appoint counsel*

We are not persuaded by McDermott's contention that the trial court improperly reviewed the record of conviction. Numerous courts of appeal, including this one, have rejected the argument that a trial court is limited to consideration of the allegations in the petition when determining whether the petitioner has made a prima facie showing of eligibility. To the contrary, a court may consider readily ascertainable information in the record of conviction and the court file, including a prior court of appeal opinion. (See *People v. Palacios* (2020) 58 Cal.App.5th 845, 855–856; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15–16 (*Gomez*), review granted Oct. 14, 2020, S264033; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.; *People v. Lee* (2020) 49 Cal.App.5th 254, 262–263,

8

review granted July 15, 2020, S262459; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *Torres*, *supra*, 46 Cal.App.5th at pp. 1173, 1178, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1138 & fn. 7, rev.gr.)

We likewise reject McDermott's argument that the trial court was required to appoint counsel once he filed a facially sufficient petition. Again, we and other courts have held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law. (See *Tarkington*, *supra*, 49 Cal.App.5th at pp. 901–902, rev.gr.; *Torres*, *supra*, 46 Cal.App.5th at p. 1173, rev.gr.; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted Nov. 10, 2020, S264684.)[3]

McDermott argues that he had a constitutional right to counsel at the outset because the petitioning procedure under section 1170.95 is a critical stage of a criminal proceeding. Therefore, the court's failure to appoint counsel amounted to structural error, requiring per se reversal. We disagree.

---

[3] Our California Supreme Court is currently reviewing whether a trial court may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95, and when the right to counsel arises under section 1170.95, subdivision (c). (*People v. Lewis*, S260598.) Pending further guidance from our high court, however, McDermott's arguments do not persuade us to deviate from our prior holdings on these points.

9

Under both the state and federal Constitutions, a defendant has a right to counsel at all critical stages of a criminal prosecution.  (U.S. Const., 6th Amend.; Cal. Const., art I, § 15; *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004 (*Gardner*); *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Rouse* (2016) 245 Cal.App.4th 292, 296–297 (*Rouse*).)  Critical stages are those "events or proceedings in which the accused is brought in confrontation with the state, where potential substantial prejudice to the accused's rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice."  (*Gardner*, at pp. 1004–1005; *Rouse*, at p. 297 [" ' "[T]he essence of a 'critical stage' is . . . the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel."  [Citation.]' "].)  Thus, arraignments, preliminary hearings, postindictment lineups and interrogations, plea negotiations, and sentencing are all critical stages. (*Gardner*, at p. 1005; *Rouse*, at p. 297.)  On the other hand, where legislation gives inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws, the Sixth Amendment is not necessarily implicated.  (See *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 ["The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature" and does not implicate a defendant's Sixth Amendment rights]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["the retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis" and defendants had no right to a jury trial on a section 1170.95 petition].)

The first, prebriefing prima facie review of a petition under section 1170.95 is not a critical stage of the proceedings. At that point, the court is simply tasked with determining whether there is a prima facie showing the petitioner falls within the provisions of the statute as a matter of law, making all factual inferences in his or her favor. (*Verdugo, supra*, 44 Cal.App.5th at p. 329, rev.gr.; *Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.) This initial prima facie review is not an adversarial proceeding. Indeed, in the instant case it does not appear that the People filed briefing or otherwise played any role in the trial court's ruling. Adjudication of a section 1170.95 petition at the eligibility stage is not akin to a sentencing hearing. The court does not rule on disputed issues of fact; it must make all factual inferences in favor of the petitioner. (*Verdugo*, at p. 329; *Tarkington*, at p. 898.) And, the court is not called upon to exercise its discretion in any respect. Nor do we detect the possibility that counsel's absence could prejudice a petitioner in a significant way, or that counsel's presence at this stage is necessary to preserve his rights. At the eligibility stage, the court's ruling must turn on undisputed facts that render a petitioner ineligible as a matter of law. Counsel's representation at this stage cannot meaningfully impact this analysis.

*People v. Rodriguez* (1998) 17 Cal.4th 253, cited by McDermott, does not compel a contrary conclusion. In *Rodriguez*, the sentencing court erroneously believed, prior to issuance of *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, that it lacked discretion to strike prior felony conviction allegations under the Three Strikes law. (*Rodriguez*, at p. 255.) *Rodriguez* concluded that the matter had to be remanded to allow the trial court to exercise its discretion on the question, and should do so

11

in the presence of defendant and his counsel.  (*Id.* at pp. 255–257.)  But such a remand for resentencing is unlike the first prima facie eligibility review on a section 1170.95 petition:  in the former, the court exercises its discretion and sentences the defendant; in the latter, it does not.

Thus, if the trial court here correctly concluded that the special circumstance findings precluded relief as a matter of law, it was not required to appoint counsel before denying the petition.  We turn to that question.

c. *The trial court correctly denied the petition because McDermott is ineligible for relief as a matter of law*

To be eligible for resentencing, McDermott was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437.  (§ 1170.95, subd. (a)(3).)  Under section 189, as amended, a defendant can be convicted of felony murder if he was the actual killer; acted as a direct aider and abettor with the intent to kill; or was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e); *People v. Murillo* (2020) 54 Cal.App.5th 160, 167 (*Murillo*), review granted Nov. 18, 2020, S264978.)

McDermott was tried on a felony murder theory; the natural and probable consequences doctrine was not at issue.  As noted, the jury found true two special circumstance allegations: that the murder was committed during an attempted kidnapping for ransom and an attempted robbery.  (§ 190.2, subd. (a)(17)(A) & (B)).  Regarding the special circumstances, the jury was instructed with CALCRIM No. 703.  That instruction provided that if the jury concluded a defendant was guilty of first degree murder, but was not the actual killer, to prove the special

circumstances the People had to prove either that the defendant intended to kill, or that he was a major participant in the crime and acted with reckless indifference to human life. The instruction further provided that a person acts with reckless indifference to human life when he or she "knowingly engages in criminal activity that he or she knows involves a grave risk of death."

Thus, the jury's findings on the special circumstance allegations make McDermott ineligible for resentencing as a matter of law. "The requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment of Senate Bill No. 1437. In both instances, the defendant must have either actually killed the victim [citations]; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in the killing [citations]; or been a major participant in the underlying felony and acted with reckless indifference to human life [citations]. By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law. Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1140–1141 (*Galvan*), review granted Oct. 14, 2020, S264284; see *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854 (*Jones*); *Gomez*, *supra*, 52 Cal.App.5th at p. 15, rev.gr.; *Murillo*, *supra*, 54 Cal.App.5th at p. 167, rev.gr.; *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*); *People v. Nunez* (2020) 57

Cal.App.5th 78, 91 (*Nunez*), review granted Jan. 13, 2021, S265918.)

McDermott argues that the jury's special circumstance findings are not preclusive in his case, because they predated our Supreme Court's decisions in *Banks* and *Clark*. "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.] *Banks* identified certain factors to be considered in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*Gomez*, *supra*, 52 Cal.App.5th at p. 13, fn. 5, rev.gr.)

The appellate courts are split on the question of whether a pre-*Banks* and *Clark* special circumstance finding makes a petitioner ineligible for section 1170.95 relief as a matter of law. (See *Jones*, *supra*, 56 Cal.App.5th at pp. 478–479, rev.gr. [collecting cases].) Our colleagues in Division Five have concluded that such a special circumstance does not, by itself, render a petitioner ineligible for relief. (*Torres*, *supra*, 46 Cal.App.5th at p. 1178, rev.gr.) *Torres* reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*Id.* at p. 1179.) "Accordingly, in determining if [petitioner] could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [petitioner] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time." (*Ibid.*) "No court has affirmed the special circumstances findings at issue post-*Banks* and *Clark*.

14

There is therefore a possibility that [the petitioner] was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [petitioner's] constitutional right to due process." (*Id.* at p. 1180, internal fn. omitted; *People v. Smith* (2020) 49 Cal.App.5th 85, 93 (*Smith*), review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258 (*York*), review granted Nov. 18, 2020, S264954 [pre-*Banks/Clark* special circumstance finding "cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve" in such a case "are not the same factual issues our Supreme Court has since identified as controlling."].)

Additionally, *York* rejected the view that a petitioner must challenge a pre-*Banks* and *Clark* special circumstance finding in a habeas corpus proceeding before he or she may successfully challenge the underlying murder conviction in a section 1170.95 proceeding. The court explained: "The statute does not state that a true finding on a special circumstance allegation automatically precludes relief. To the contrary, its language implies that there is no such bar to eligibility. Section 1170.95, subdivision (d)(2), provides: 'If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.' We find it significant that the Legislature made no provision for the consequence of a prior finding by a court or a jury that a petitioner *was* a major participant and *did* act with reckless indifference to human life. If the Legislature had intended such a finding automatically to

15

preclude eligibility for relief, it could have said so." (*York*, *supra*, 54 Cal.App.5th at pp. 260–261, internal fn. omitted, rev.gr.)

As noted, other courts hold that a pre-*Banks* and *Clark* special circumstance finding bars section 1170.95 relief as a matter of law. They reason that section 1170.95 was not meant to be an avenue for a collateral attack on the sufficiency of the evidence to support a special circumstance finding (see, e.g., *Allison*, *supra*, 55 Cal.App.5th at pp. 453, 461), and a defendant seeking to challenge the sufficiency of the evidence to prove a pre-*Banks* and *Clark* major participant or reckless indifference finding must do so via a petition for writ of habeas corpus. (*Gomez*, *supra*, 52 Cal.App.5th at pp. 16–17, rev.gr.; *Galvan*, *supra*, 52 Cal.App.5th at p. 1137, rev.gr.; *Jones*, *supra*, 56 Cal.App.5th at p. 483, rev.gr.; *Nunez*, *supra*, 57 Cal.App.5th at p. 96, rev.gr.)

In support of this view, some cases point out that *Banks* and *Clark* did not state a new rule of law, but merely clarified the already-existing meaning of "major participant" and "reckless indifference," terms that do not have specialized definitions and are interpreted as used in common parlance. (*Jones*, *supra*, 56 Cal.App.5th at pp. 482, 484, rev.gr.; *Nunez*, *supra*, 57 Cal.App.5th at p. 92, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at pp. 458–459.) While optional language was added to the pattern jury instructions after *Banks* and *Clark*, "no mandatory language or material changes were made to the CALCRIM special circumstances instructions," and there is no requirement that juries be instructed on the *Banks/Clark* clarifications. (*Nunez*, at pp. 92–93; *Jones*, at p. 484; *Allison*, at pp. 458–459.) Moreover, a petitioner would have had the same incentive, both pre-and post-*Banks* and *Clark*, to minimize his or her involvement in the

16

crimes and culpability for the murder. (*Allison*, at p. 459.) Thus, the argument that a pre-*Banks/Clark* special circumstance finding must be presumed invalid exaggerates the impact of *Banks* and *Clark*. (See *Allison*, at p. 458; *Jones*, at p. 484.) There is "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94).

This line of authority also reasons that the *Torres/Smith/York* approach is inconsistent with the plain language of section 1170.95, because a defendant claiming ineligibility based on *Banks* and *Clark* does not meet the statutory requirement that he or she cannot be convicted *because of* changes to sections 188 or 189 made by Senate Bill 1437. (*Jones, supra*, 56 Cal.App.5th at p. 484, rev.gr.) "In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) [¶] . . . Although [petitioner] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life." (*Galvan, supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *Murillo, supra*,

54 Cal.App.5th at p. 168, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at p. 460; *Nunez*, *supra*, 57 Cal.App.5th at pp. 94–95, rev.gr.)

Further, in concluding that the proper vehicle to challenge a pre-*Banks* and *Clark* special circumstance finding is a petition for writ of habeas corpus, courts point to the different burdens involved in a habeas petition and a section 1170.95 petition. A defendant challenging a pre-*Banks/Clark* special circumstance finding by means of a writ of habeas corpus must show that the record contains insufficient evidence to prove he or she acted as a major participant or with reckless indifference. (*Jones*, *supra*, 56 Cal.App.5th at p. 485, rev.gr.; *Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, rev.gr.; *Gomez*, *supra*, 52 Cal.App.5th at p. 17, rev.gr.) "By contrast, a petitioner who demonstrates a prima facie case for relief under section 1170.95 has shifted the burden to the People to prove beyond a reasonable doubt that they are ineligible for resentencing (that is, they still *could be* convicted of murder despite the change to the felony-murder rule in § 189). [Citation.] . . . [T]he *Torres*/*Smith*/*York* line of cases would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.) Allowing petitioners to challenge a special circumstance finding via a section 1170.95 petition would give them an advantage over similarly situated defendants, based on the date of their convictions. (*Galvan*, at pp. 1142–1143; see *Nunez*, *supra*, 57 Cal.App.5th at pp. 96–97, rev.gr.)

18

Such a procedure is inconsistent with the Legislature's intent. "The Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. But there is no indication in the statute's text or history of any legislative intent to permit defendants to challenge their murder convictions by attacking prior findings of fact." (*Nunez*, *supra*, 57 Cal.App.5th at p. 95, rev.gr.) "Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison*, *supra*, 55 Cal.App.5th at p. 461.)

*Allison* found unpersuasive the *York* court's reasoning about section 1170.95, subdivision (d)(2), the provision expressly requiring a court to grant relief if there has been a prior finding the petitioner did not act as a major participant, with reckless indifference. *Allison* reasoned: "The Legislature could not and did not need to spell out every ground for denying a petition. For example, the Legislature did not specify that a defendant with a special circumstance finding for the administration of poison (§ 190.2, subd. (a)(19)) or for killing while the defendant was an

19

active participant in a criminal street gang (§ 190.2, subd. (a)(22)) is ineligible for relief. But both of those special circumstances require that the defendant intentionally killed the victim . . . , and a court would be correct to summarily deny a petition in such a case because the defendant could not make a prima facie claim that he was entitled to relief. If these kinds of findings did not bar defendants from relief under section 1170.95, it would be unclear how any prior factual findings could preclude relief under section 1170.95." (*Allison*, *supra*, 55 Cal.App.5th at pp. 459–460.) Thus, *Allison* concluded, "the Legislature's silence regarding defendants with pre-*Banks* and *Clark* special circumstances does not imply that such defendants are eligible for resentencing under section 1170.95." (*Id.* at p. 460.)

While we acknowledge that both of the foregoing lines of authority are not without force, we respectfully disagree with our colleagues in Division Five and conclude that the cases holding that a special circumstance finding precludes relief as a matter of law are more persuasive. Accordingly, we conclude that the trial

20

court correctly denied McDermott's section 1170.95 petition[4] because he is ineligible for relief as a matter of law.[5]

---

[4] McDermott argues that, if his petition alone was insufficient to make a prima facie case, we should remand to the trial court for consideration of the petition in conjunction with the additional two-page document he submitted with his notice of appeal. He argues that ReStore Justice, the organization that furnished his petition and distributed a guide to the petition process to inmates, represented that petitioners would be entitled to counsel if they simply checked the appropriate box on the petition; he relied on this representation; and "[t]his reliance interest is an element of due process." Setting aside the question of whether a nongovernmental entity's distribution of a document could confer a due process right, the additional pages attached to McDermott's notice of appeal do not assist him. His petition was correctly denied at the eligibility stage because the jury's special circumstance findings disqualify him as a matter of law. His arguments as to why those findings were factually incorrect would not change that conclusion.

[5] In light of our conclusion, we do not reach the People's arguments that any error was harmless, or that this court's and a federal court's denials of McDermott's prior habeas petitions demonstrate the special circumstance findings "necessarily comported with the post-*Banks/Clark* guidelines."

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


I concur:


EGERTON, J.

DHANIDINA, J., Concurring and Dissenting:

I agree with the majority's statement of facts and the law regarding the procedural steps Penal Code[1] section 1170.95 requires and as are described in *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted March 18, 2020, S260493. The majority has also explained well the split among appellate courts about the interplay between section 1170.95 and a special circumstance finding that a defendant was a major participant in a murder who acted with reckless indifference to human life, which finding predates *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

But where the majority sides with the *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284, line of cases regarding the split, I side with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011.  In my view, a special circumstance finding that predates *Banks* and *Clark* does not render a defendant such as McDermott ineligible for relief as a matter of law.  (See, e.g., *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835.)  I therefore respectfully dissent as to that issue.

As the majority has said, under Senate Bill No. 1437, malice may no longer be imputed to a person based solely on the person's participation in the crime; now, the person must have acted with malice aforethought to be convicted of murder.  (§ 188; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019, S258234.)  To that end, the natural and probable consequences doctrine no longer applies to murder.  And a

---

[1] All further statutory references are to the Penal Code.

1

participant in enumerated crimes is liable under the felony-murder doctrine only if the participant was the actual killer; or with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e); see *Munoz*, at pp. 749–750.)

The petitioning process Senate Bill No. 1437 created via section 1170.95 thus requires a prima facie showing that the defendant was not a major participant in the murder or did not act with reckless indifference to life. Of course, a jury here found that McDermott was a major participant in the murder who acted with reckless indifference to life. However, that finding predates *Banks* and *Clark*. In my view, those decisions had the effect of narrowing the field of defendants who are major participants who act with reckless indifference to human life. (See, e.g., *People v. Torres*, *supra*, 46 Cal.App.5th at p. 1179; *People v. Smith*, *supra*, 49 Cal.App.5th at p. 93.) It could be that a pre-*Banks* and *Clark* jury made "precisely the same finding it must make in order to convict a defendant of felony murder under the new law." (Maj. opn. *ante*, at p. 13.) But it also could be that evidence supporting the true finding the jury made before *Banks* and *Clark* would not have been sufficient after them.

Section 1170.95 gives a defendant in McDermott's situation the mere opportunity to make that showing, with the benefit of counsel. I therefore agree with my colleagues in Division 5 that a section 1170.95 petition is a challenge to a murder conviction which may require consideration of a pre-*Banks* and *Clark* special circumstance finding. (See generally *People v. York*, *supra*, 54 Cal.App.5th at p. 260; *People v. Smith*, *supra*, 49 Cal.App.5th 85; *People v. Torres*, *supra*, 46 Cal.App.5th 1168.)

2

In this discrete situation involving a defendant convicted of a special circumstance pre-*Banks* and *Clark*, the defendant has made a sufficient showing to get past the preliminary prima facie level of review described in *Verdugo* and is entitled to appointment of counsel to assist in further briefing, i.e., to proceed to the second step of the prima facie review.

This conclusion does not open the door to wholesale challenges to *any* prior juror finding and to all manner of collateral attack. Rather, the California Supreme Court in *Banks* and *Clark* has, in one specific and limited instance, decisively clarified what it means to be a major participant in a murder who acts with reckless indifference to life. As that clarification could here reflect on McDermott's murder conviction, I would therefore find that McDermott is not ineligible for relief as a matter of law and direct the trial court to appoint counsel to represent him and to proceed in accordance with section 1170.95, subdivision (c). (See, e.g., *People v. Smith*, *supra*, 49 Cal.App.5th at pp. 95–96; but see *People v. Law* (2020) 48 Cal.App.5th 811, review granted July 8, 2020, S262490 [error susceptible to harmless error analysis].)

Further, I do not agree with the People's additional reasons why McDermott cannot progress past the preliminary prima facie review. The People argue that McDermott *has* challenged his special circumstance finding post-*Banks* and *Clark* via state and federal petitions for writ of habeas corpus he filed. In 2019, we summarily denied McDermott's state petition for writ of habeas corpus that had raised *Banks* and *Clark*. The ruling on the habeas petition, however, was not on the merits of whether the jury's special circumstance finding meets the more stringent *Banks* and *Clark* rubric and was not res judicata in future

3

proceedings.  (See, e.g., *People v. Torres*, *supra*, 46 Cal.App.5th at p. 1180, fn. 4; *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6.)  In a federal petition for writ of habeas corpus, McDermott argued that he was actually innocent of the special circumstance allegation based on new evidence.  In denying the petition, the federal court addressed only the reckless indifference prong of the special circumstance allegation.  The federal court did not address whether McDermott was a major participant as now defined by *Banks*.  Thus, no court has affirmed the special circumstance finding, as now understood per *Banks* and *Clark*.


DHANIDINA, J.

4